Tilghman C. J.
John Kean, one of the plaintiffs in error, and defendants below, entered into a recognisance, dated 27th October, 1801, whereby he became bound to John Joseph Henry, Esq., President of the Orphan’s Court of Dauphin county, and his successors in office, in the sum of 11,160/., conditioned for the payment to the widow and children of John Hamilton, deceased, of their respective shares of the appraised value of certain lands and real estate, of the said Hamilton, which were taken by the said Kean, at the said appraised value. Kean sold these lands, &c., to Henry Orth, by whom they were sold to John Close, the other defendant in this action ; after which,., the said Kean became insolvent, and was discharged by virtue of an act of assembly, passed the 13th March, 1812. The scire facias was issued, for the use of Hugh Hamilton, one of the heirs of the said John Hamilton, deceased, on the recognisance before mentioned, against John Kean, the recognisor, and John Close, terre-tenant of the lands, &c., taken by Kean, at the appraised value, as aforesaid. On the trial of the cause in *154 the Court of Common Pleas of Dauphin county, several exceptions were taken to the opinion of the Court, which are now to be considered.
1. It was contended, that the suit ought to have been brought in the name of the executors of Judge Henry. The recognisance was to John Joseph Henry, President of the Orphan’s Court, and his successors in office: that there is no President of the Orphan’s Court, and there can be no successors in office : therefore the words, President of the Orphan's Court, and his successors, are unmeaning and nugatory ; and this recognisance was, in fact taken, to John Joseph Henry, in his personal capacity. This being the case, and he being dead, the suit should have been brought in the name of his executors. It was not denied that the recognisance is valid ; but alleged, that the suit is brought in the name of the wrong person. This was, substantially, the argument on behalf of the plaintiff in error. But 1 cannot assent to it, because, the recognisance is expressly taken to John Joseph Henry, President of the Orphan’s Court, and his successors in office, and it is not true, that there is no President of the Orphan’s Court. There is a President of the Court of Common Pleas ; and it is provided by “ the act to alter the judiciary system of the Commonwealth,” sect. 23. that “ the Judges of the Court of Common Pleas, or any two of them, the President being one, shall compose and hold the Orphan’s Court.” It may with strict propriety be said then, that the President of the Court of Common Pleas, is President of the Orphan’s Court. As to the objection, that the recognisance was taken to the President, and his successors in office, it is the duty of this Court to get over it, if possible, being the form used in Dauphin county for many years : much property belonging to widows and orphans, depends upon it. The act of 1764, under which it was taken, directs security to be given, in such manner as the Orphan?s Court shall limit and appoint. Tire matter being thus left to the discretion of the Court, different Courts have adopted different forms; and some have taken bonds, and some recognisances. Some take them in the name of the presiding Judge, and his successors; and others, of the Commonwealth. I consider a recognisance “ to the President, and his successors,” the same, as “ to the President for the time heing.” He may be regarded for this purpose, as in na *155 "cure of a Corporation sole, which has perpetual existence. It is a name, which we may presume, will endure as long as our government; and’ that is sufficient for the purpose of the recognisance. I am of opinion, therefore, that it is good.
2. It is said, that the recognisance is no lien on the lands of John Hamilton, taken by Kean at the appraised value. For this, the case of Campbell v. Richardson, is relied on. 1 Dall. 131. That was a recognisance of special bail, and the decision was, that it was not a lien, before judgment was obtained on the recognisance. Mr. President Shippen, who decided that case, relied principally on the understanding which had prevailed in Pennsylvania, for he admitted, that the law of England was different. If we adopt Mr. Ship-pen’s principle, we shall say that the present recognisance, was a lien on the lands of the intestate Hamilton, from its date: for it is now 30 years since Chief Justice M‘Kean laid it down, in the case of Walton v. Willis, (1 Dall. 265,) that a recognisance of this kind was a lien, and therefore ought always to be taken by the Orphan’s Courts; and he censured those Courts, for sometimes taking bonds, which were no lien. From that time, it may be safely asserted, that these recognisances have been generally understood to be a lien. They were considered as in nature of a judgment in Beatty and Wife v. Smith, (4 Yeates, 102,) decided at Nisi Prius, by Yeates and Smith, Judges, in 1804; nor did the counsel on either side, in that case, entertain an idea, that they were not alien on the lands of the intestate. We have, here, then, an understanding and practice of 30 years, strengthened by Judicial authority. This surely is sufficient to support, what we must all wish to support, the security of widows and orphans. I am therefore of opinion, .that this recognisance was a lien on the lands of Hamilton, taken by Kean at the appraisment, from its date.
3. But it is contended on behalf of Close, the terre-tenant, that if the recognisance was a lien, it was only an equitable one, and ought not to affect him, who was a purchaser for valuable consideration, without notice. To this, there are two answers. In the first place, it was not an equitable, but a legal lien ; a record, of which all the world was bound to ‘ take notice. And secondly, the very deed, under which the terre-tenant derives his title, gives notice of this recognisance, *156 not indeed expressly, but by such reference as affects him with notice. There is nothing therefore, in this objection.
4. The 4th exception is, that this action does not lie against Kean, who was discharged under the insolvent law. It lies against him without doubt, for the purpose of coming at the lands which were bound by the recognisance. It was necessary to make him a party, for the sake of the terretenant; because, possibly he might have satisfied the plaintiff’s demand, before he became insolvent. The Court, upon application, would take care to guard him against an execution, which might affect the protection acquired under the insolvent law : — how far that protection went, is not now in question. It is not the plaintiff’s object to disturb Kean, but to get his money out of the lands in the hands of the terre-tenant. For this purpose, I think it was proper to make Kean a party to this suit.
5. On the trial of this cause, the defendant’s counsel asked the Court to instruct the jury whether, in case they found for the plaintiff, the judgment could be executed against Kean. This the Court refused to do, because the jury were to find, upon the issue joined, according to the evidence, without regard to the consequences. In this, it appears to me that the Court was right. The issues were, nul tiel record., and payment; which could not be affected by any instruction given to the jury on the question proposed by the defendant’s counsel.
There was a sixth error assigned, which was very properly abandoned. It was this, — that no declaration was filed in this cause. A scire facias contains the substance of a declaration, and therefore in suits of this kind, declarations have not been usual.
I am of opinion, that the judgment should be affirmed.
Gibson J. and Duncan J. concurred.
Judgment affirmed.