BERRYHILL and MURRAY *against* WELLS and wife
administrators of WALLACE.

IN ERROR.

*Lancaster,*
*Monday,*
May 25.

A justice of
the peace may
issue a *scire fa-*
*cias,* as well to
introduce new
parties, as to en-
force a recogni-
sance of bail.
Where one
plaintiff dies af-
ter judgment,
the survivor
may have exe-
cution without
*scire facias,*
suggesting
the death of
his co-plaintiff
on the record,
or reciting it in
the writ. *Secus*
if the survivor
is a *feme,* who
afterwards
takes baron.
It is not error
to give judg-
ment upon a
*scire facias* for
the amount of
the preceding
judgment and
*interest* up to the
judgment on the
*scire facias.*
Whether *debt* or
*scire facias* be
brought on a
judgment, inte-
rest is recover-
able; though in
*scire facias* it is
usual to give

IN error to the Common Pleas of *Dauphin,* the case was thus:

*Isabella Wallace* and *Richard Fulton,* administrators of *Richard Wallace,* on the 30th of *September* 1805, obtained judgment before a justice of the peace, against *Berryhill* and *Murray.* Before the stay of execution had expired, *Fulton* died, and *Isabella Wallace* intermarried with *Alexander Wells.* The justice then issued a *scire facias,* in the names of *Wells* and wife, the now defendants in error; and upon the return of that writ, gave judgment for the amount of the original judgment and costs, and *interest* upon them. This judgment was removed by *certiorari* to the Common Pleas, where after its affirmance, the defendants in error released all the interest beyond that which was due on the original judgment.

*Elder* for the plaintiffs in error, contended for the reversal of the judgment upon four grounds. 1. That a justice of the peace had no power under the " hundred dollar act," of the 18th of *March* 1804, to issue a *scire facias,* except against special bail; that being expressly stated, and no other. 2. That the writ of *scire facias,* if within his power in a proper case, was not so here, because execution might have issued without new parties; for which he cited *Withers* v. *Harris* (*a*), and *Brace* v. *Pennoyer* (*b*), where it was held,

(*a*) 7 *Mod.* 68.                 (*b*) 5 *Mod.* 338.

judgment only that the plaintiff shall have his execution, and the act of 1700 gives interest without a special direction.

that if one of two plaintiffs dies after judgment, the survivor may have execution; and *Doyley* v. *White* (a), which decided that execution may go against a woman who marries after judgment, without altering her maiden name, or joining the husband; the converse of which was the present case, and therefore the same rule applicable. 3. That the judgment on the *scire facias* should have been, that the plaintiffs have execution of the original judgment, without including interest. That could be given only in debt upon the first judgment. The *scire facias* is merely to shew cause, why execution should not go upon that judgment. 4. That interest had been added upon the costs, as well as the amount recovered; and that the defendants in error could not release after affirmance below. But this point was not pressed.

*Laird* for defendants in error, answered, 1. That a *scire facias* was incident to the power of issuing execution, if it became necessary to constitute new parties, otherwise the death or marriage of a party might defeat the judgment. It was implied in the authority to issue execution. 2. That it became necessary here to constitute new parties, because not only one of the plaintiffs died, but the other had married. Her husband must be introduced, because the wife could not alone sue execution. 2 *Att. & Plead. Treas.* 381. 3. That interest was an incident to every judgment in *Pennsylvania*, by virtue of the act of 1700, 1 *Smith's Laws* 7.; and therefore the judgment in effect would have carried interest, though it had not been named. It is not error to spread upon the record what is the legal effect of the judgment, though it may be contrary to form. 4. The excess of interest, was released; and it would have been competent to the defendants in error to have cured that error by a release even in this court, as has been many times decided.

Tilghman C. J. The plaintiff in error has rested his case on three points. 1. That the act of the 28th of *March* 1804, (the Hundred Dollar law) gave the justices of the peace no power to issue a *sci. fa.* 2. That if the act did give power to issue a *sci. fa.*, this was a case in which such writ was unnecessary. 3. That the judgment rendered on the *sci.*

(a) *Cro. Jac.* 323.

*fa.* was erroneous, because it included interest on the original judgment.

1. The reason assigned for supposing, that the act gives no authority to issue a *sci. fa.*, is, that it gives express authority to issue such writ against *special bail*, but mentions no other case. This reason is not good. The act authorises the justice to render judgment and issue execution. And it must be understood, from the nature of the case, that it likewise authorises such process as is a necessary foundation for an execution. It never could have been intended to dispense with a *sci. fa.* previous to an execution, in all cases. This would leave the defendant at the mercy of the plaintiff. I consider the power of issuing a *sci. fa.*, as appurtenant to the power of issuing an execution, and included in it, though not expressly mentioned.

2. Cases were cited to shew that where one plaintiff dies after judgment, the survivor may have an execution without a *sci. fa.* This is very true, because there is no new party to the execution; the death of the deceased plaintiff appears either by suggestion on the record, or by recital in the execution, and no person but the survivor is entitled to the execution. But that is not the present case. One of the plaintiffs died after the judgment; but that is not all. The survivor, who was a widow at the time of the judgment, took a husband afterwards. It became necessary therefore, to introduce her husband into the subsequent process. This is the criterion for ascertaining the necessity of a *sci. fa.* After her marriage, she ought not to have taken an execution in her own name. Of course she was put to a *sci. fa.*, in order to introduce her husband.

3. In support of the third point it is said that the *sci. fa.* calls on the defendant to shew cause why an execution should not be issued against him, and consequently the plaintiff can be entitled to an execution for no more than the precise amount of the judgment. This argument might hold good in *England*, where interest on the judgment is not a matter of course. There the plaintiff may either bring an action of debt on the judgment, in which case he may recover interest by way of damages; or he may proceed by *sci. fa.*, in which no damages are recoverable, and of course no interest. But we are to decide according to our own law.

By an act of assembly, passed in the year 1700, the plaintiff who takes out an execution, is entitled to levy to the amount of his judgment and *interest*, from the time of obtaining it, to the time of sale of the defendant's property, or till satisfaction be made. His being put to a *sci. fa.* does not deprive him of the right which the law gives him of recovering interest. Therefore when the justice of the peace gave judgment on the *sci. fa.* for the amount of the original judgment, and the interest on it, he did no more than the law would have done without him. He did no more than expressly direct that, which would have been tacitly directed by law, if he had been silent. If he had simply given judgment that the plaintiff should have his execution, interest to the time of sale of the defendant's property would have been included by operation of law.

I am of opinion, that the plaintiff in error has failed in all his points, and therefore the judgment should be affirmed.

YEATES J. It has been assigned for error, that the justice of the peace who rendered judgment in the cause, was not authorised by the law of the 28th of *March* 1804, to issue the *scire facias* to revive the judgment, that act giving no power to issue a *scire facias* except against special bail.

The facts which appear on the record are, that *Richard Fulton* and *Isabella Wallace*, as administrators of *Richard Wallace*, obtained judgment against the now plaintiffs in error, before the justice, on the 30th of *September* 1805, for 78 dollars and 42 cents; that *Fulton* died before the stay of execution was expired; and that *Isabella* afterwards intermarried with *Alexander Wells*, in whose names the *scire facias* issued, returnable on the 7th of *July* 1806. I apprehend this proceeding to be perfectly regular and correct. It is a settled principle that in no case where the parties to a judgment are changed, ought execution to be sued out by a different writ, without a *scire facias*. 2 *Lord Ray.* 808. It is inconsistent with common sense, that a judgment obtained by two or more persons, should warrant an execution in the names of others, not parties to the original proceedings, and where the change does not appear on the record. The remedy by *scire facias post annum et diem* in personal actions, was given by statute of *Westm.* 2. *c.* 45. At common law

*1812.*

BERRYHILL
*v.*
WELLS.

previous thereto, the action must have been brought on the judgment after the year and day. 2 *Inst.* 469., *Gilb. Cas.* 393.

It has been further assigned for error, that the judgment rendered on the *scire facias* included interest as well on the amount of the original judgment, as on the costs thereby recovered, which the law will not warrant; and that it was not competent to the attorney of the plaintiffs below to release the interest on the costs after the proceedings had been removed into the Court of Common Pleas by *certiorari*.

In modern times, courts of justice have been very liberal in granting amendments, where injustice is not thereby done. In *Short* v. *Coffin*, the Court of King's Bench were all clearly of opinion, to amend a judgment against an executor *de bonis propriis*, by making it *de bonis testatoris si, &c. et de bonis propriis si non, &c.* And this was after a writ of error had been brought, *in nullo est erratum* pleaded, and an argument had in the Exchequer Chamber. 5 *Burr.* 2730. In *Burrows* v. *Heysham*, 1 *Dall.* 133., a judgment upon a *scire facias* against special bail, was removed by writ of error into this court. Upon the issuing of a *certiorari* to bring up the record, the plaintiffs moved in the Common Pleas to amend the *scire facias* by the record, substituting *September* 1782, for *December* 1781; and the same was allowed by the court, who thought it proper upon the liberal principles of modern practice, and indeed for the honour of common sense. When the damages found by the jury, exceeded those laid in the declaration, this court permitted a remittitur to be entered for the excess, after a writ of error to the Common Pleas of *Berks* county. *Furry* v. *Stone. September* Term 1792. That amendments would be allowed after error brought, was also established in *Prevost* v. *Nicholls*, in *March* Term 1808. And in *Douglass et al.* v. *Bearn's executors*, at *Sunbury*, *July* Term 1809, it was declared by the Chief Justice, that after error brought, the court where the record remained, might order an amendment on proper grounds.

As to the recovery of interest on the amount of the first judgment under a *scire facias*, I admit that this cannot be done by the *English* law. The formal entry of judgment there on the *scire facias* is, *quod fiat executio* of the debt originally recovered. *Lilly's Ent.* 340. 398. 522. Damages cannot be given in a *scire facias*. 1 *Roll. Abr.* 574. *pl.* 6. In a

*scire facias*, no damages shall be recovered, 2 *H.* 6. 15.; nor could costs until the statute of 8 & 9 *W.* 3. *c.* 11. *s.* 3. In *Henriques* v. *The Dutch West India Company*, 3 *Stra.* 807., 2 *Ld. Ray.* 1532, the judgment was reversed for the damages. But even there, though damages for the delay of execution could not be given in a *scire facias*, yet the judgment might be reversed for the damages, and affirmed as to the rest on error. 3 *Burr.* 1791.

However, an act of assembly of this government, made as far back as 1700, has made an important alteration in the *English* law. The second section thereof provides, " that " lawful interest shall be allowed to the creditor for the " sum or value he obtained judgment for, from the time the " said judgment was obtained, till the time of sale, or till " satisfaction be made." 1 *Dall. St. Laws* 13. I take the practice under this law to have been, both before and since the *American* revolution, to ascertain the real debt at the time of the judgment entered, and to calculate interest thereon as a new principal. So it was upon an obligation or note carrying interest, and on book debts, which, unless secured by special contract, were formerly supposed not to carry interest until judgment. Such also was the practice during the revolutionary war, when executions were directed to be issued for instalments of debts in a manner provided for by law. Since the argument, I have conversed with most of the elder gentlemen of the profession in the city, and their recollection accords with what I have stated to be the practice, as well upon writs of *scire facias* brought to revive judgments, as in actions of debt founded on them. In *Fitzgerald* v. *Caldwell's Exrs.*, which was a *scire facias* brought to enforce a judgment, *Shippen*, Chief Justice, after repeating the above provision of the act of 1700 says, " In- " terest is therefore, generally speaking, a legal incident of " every judgment." 4 *Dall.* 252.

It is true, that judgments amongst us, unless grounded on verdicts or the reports of referees, are seldom rendered for a specified sum. But if the judgment given in a *scire facias* is considered as given for the mere amount of the first judgment, it necessarily follows that any debtor may defeat the intentions of the legislature in their law of 1700. Because he may tender the sum for which the original

1812.

BERRYHILL
*v.*
WELLS.

1812.

BERRYHILL
v.
WELLS.

judgment was obtained, and the costs, and may insist on satisfaction being entered on record. But if the creditor is entitled to interest on his judgment, I can see no solid ground of objection to that interest being included in the judgment on the *scire facias.* I am of opinion, on the whole matter, that the judgment of the Court of Common Pleas should be affirmed.

BRACKENRIDGE J. was prevented by sickness from being present at the argument, and gave no opinion.

Judgment affirmed.