## In re Jackson Township Election District

*A. Greenwald Gearhart*, county solicitor, for county board of elections.

SHULL, P. J., November 16, 1940.—On September 5, 1940, 36 registered electors of the Township of Jackson, County of Monroe, State of Pennsylvania, presented their petition to the Court of Quarter Sessions of the Peace of Monroe County, praying:

"That your honorable court refer this petition to the county board of elections, with directions that it make full investigation of the facts and that it report to the next term of your honorable court its findings and recommendations as to the division of the election district, and that they attach to the said report a plot or draft of the proposed new election district or districts if the same can not be fully designated by natural lines or boundaries."

Upon the presentation of this petition, the said court of quarter sessions of the peace made the following order:

"And now, September 5, 1940, the within petition having been presented and read in open court, upon due consideration thereof the court refers said petition to the county board of elections, as within prayed for, and it shall be the duty of the county board of elections to make a full investigation of the facts and to report to the next term of this court its findings and recommendations as to the division of the election district of Jackson Township as within prayed for. If the county board shall find that a division of said election district will promote the convenience of the electors and the public interest it shall recommend a proper division, redivision, alteration, or formation of election districts, and shall accompany its report with a map, plot, or draft of the new election district or districts proposed by it if the same can not be fully designated by natural lines."

In pursuance of the above order, the county board of elections proceeded as directed and made return to the said court of quarter sessions on September 26, 1940, said report, inter alia, being as follows:

"1. That upon the reference of said petition to the subscribers hereof, the said Commissioners of Monroe County, sitting as a county board of elections, made a full investigation of the facts and find that the total registration in said Jackson Township numbers three hundred fifty-eight (358) duly registered electors; that the residences of the various electors in said Jackson Township are largely in what might be termed the southern and

northern sections of said township; that a division of said Jackson Township into two election districts will promote the convenience of the electors and the public interests in said Jackson Township.

"2. That in the hereinafter proposed or recommended election districts, viz: the Northern and Southern Districts of Jackson Township, the investigation of your subscribers establishes and we find as a fact that in the proposed Northern District there will be approximately two hundred thirty-three (233) electors and in the proposed Southern District there will be approximately one hundred twenty-five (125) electors.

"3. Your subscribers, therefore, recommend that the said township be divided into two election districts to be known as the Northern and Southern Districts."

We particularly note that the total number of registered electors in this township is 358, which total is a very moderate one for an election district. The Pennsylvania Election Code of June 3, 1937, P. L. 1333, provides a minimum of 100 to warrant the creation or establishing of any election district. As we view it, before the creation of such small districts and incurring of the attendant increased expense for the taxpayers to pay, some material hardship upon the electors must be shown to exist to warrant or justify the setting up of such election districts. From the erection of the county, Jackson Township has functioned as a single election district and, so far as we know, without complaint prior to this time.

While the return of the county board of elections blandly states that "a division of said Jackson Township into two election districts will promote the convenience of the electors and the public interest of said Jackson Township", there are not anywhere in the whole report facts stated upon which this conclusion is based, and if the court were to consider it, it would, consequently, be of little or no assistance in determining that question. It is true that the establishing of a polling place upon the front porch of every elector would promote the conveni-

ence of the electors, but such procedure would be utterly devoid of horse sense, and surely would not be an efficient administration of the financial affairs of the taxpayers of the county.

We are discussing these things for the reason that they should be considered if the question of dividing Jackson Township be raised and presented in a proper legal manner. As this matter comes before the court, we may not at this time pass upon the merits of the question, for the reason that this proceeding is brought under section 503 of the Pennsylvania Election Code, and section 503 of the code is unconstitutional and void, it being in conflict with article VIII, sec. 11, of the Constitution of Pennsylvania. Article VIII, sec. 11, of the Constitution of Pennsylvania, as amended, P. L. (1927) 1043, provides:

"Townships, and wards of cities or boroughs, shall form or be divided into election districts of compact and contiguous territory, in such manner as the court of quarter sessions of the city or county in which the same are located may direct; but the courts of quarter sessions, having jurisdiction therein, shall have power to divide or change the boundaries of election districts whenever the court of the proper county shall be of opinion that the convenience of the electors and the public interests will be promoted thereby."

This matter was carefully considered and fully discussed in the case of In re Election District, 86 Pitts. 320, in which case our learned brother Gardner, J., said:

"We now come to consider what effect and validity has a statute, regulating the procedure, passed subsequent to the adoption of the constitution. The first act to be passed was in 1876 and it was challenged in the case In Re Division of Bern Township, 115 Pa. 615. The supreme court in a *per curiam* opinion held that the quarter sessions court was not in any way bound by the act of assembly. In Purdon's Constitution of Pennsylvania, page 371, we find this interpretation of the case:

" 'The clause of this section concerning the division of townships and wards into election districts vests the power to divide townships into election districts in the court of quarter sessions, which may act upon a petition filed for that purpose, without the appointment of commissioners, and without proceedings by view, review and exceptions.

" 'The legislature cannot take away or affect this power, and a statute commanding the court to confirm the report of commissioners appointed under its provisions for the purpose of dividing a township into election districts, unless exceptions are filed thereto, within a given time, is unconstitutional.' The same authority makes the following editorial construction of the case In Re Fell Township Polling Place, 39 Pa. Super. 319:

" 'Act of 1876 relating to procedure in such matters, is not binding upon the court, nor can the court delegate its constitutional power.'

"In 295 Pa. 478, it is positively stated that the Bern Township case decided that the sole discretion to redivide is lodged, by the constitution, in the quarter sessions court and cannot be taken away by legislative enactment.

"The same question was again raised in Waynesburg Borough's North Ward, 29 Superior Court, 525, and in Waynesburg Borough's South Ward, 29 Superior Court, 534. The court in those cases took the view that any act of the legislature dealing with procedure of matters on the subject of election districts was unconstitutional. See also Fell Township Polling Place, 39 Pa. Superior 319. The act of June 3, 1937, P. L. 1933, provides as follows:

" 'Upon the petition of twenty registered electors of any * * * election district, to the court of quarter sessions of the proper county, praying for the division * * * of such election district into two or more election districts * * * the said court shall refer the said petition to the county board of elections, which shall make a full investigation of the facts, and shall report to the next term of

the court its findings and recommendations as to the * * * division of election districts prayed for. If the county board shall find that a division * * * will promote the convenience of the electors and the public interests, it shall recommend a proper division * * * and shall accompany its report with a map, plot or draft of the new election districts proposed by it, if the same cannot be fully designated by natural line.' Further, in section 504:

" 'The court shall not make any final order for the division . . . of election districts until at least ten days after notice shall have been posted in at least five public and conspicuous places in the district to be affected thereby, one of which notices shall be posted on or in the immediate vicinity of the polling place in each such district.'

"These provisions are clearly restrictive to the power of the court to make the division as granted under the constitutional provision aforesaid and in our opinion are therefore unconstitutional"; and with the conclusion of Judge Gardner that this section is unconstitutional and void we are in full accord and for that reason this proceeding must be dismissed.

And now, November 16, 1940, petition for division of the election district of Jackson Township, Monroe County, Pa., is dismissed.